## Joseph Colombo v. Times-Argus Association, Inc., and James Bornemeier

[380 A.2d 80]

No. 29-76

Present: Barney, C.J., Daley, Larrow, Billings, and Hill, JJ.

Opinion Filed October 31, 1977

*Joseph C. Palmisano,* Barre, for Plaintiff.

*Paterson, Gibson, Noble & Brownell,* Montpelier, for Defendants.

**Larrow, J.** Plaintiff, a police officer and detective in the Montpelier Police Department, brought his libel action against defendant Times-Argus Association, Inc., a publisher of a daily newspaper, and James Bornemeier, one of its reporters, for publication of two news articles claimed to contain defamatory falsehoods. Trial was by jury, and at the close of plaintiff's case the court directed a verdict for both defendants predicated upon plaintiff's status as a public official and the holding of *New York Times Co.* v. *Sullivan,* 376 U.S. 254 (1964), that recovery by a public official under the First and Fourteenth Amendments requires a showing of "actual malice," a requirement not met by plaintiff's evidence. Plaintiff claims error in directing a verdict against him, and in the prior

admission of hearsay evidence. We disagree with both claims, and affirm.

Apart from lending some color to a discussion of otherwise drab legal principles, the details of the articles in question are not particularly material, but in general they linked plaintiff with alleged public distribution of a police photo of a nude college student "streaker." If untrue, as claimed by plaintiff, their status as libels is not disputed.

As a matter of background, it seems established quite firmly that actual malice is required as a basis for recovery in a libel action against a newspaper brought by a "public official" or "public figure." *New York Times Co.* v. *Sullivan, supra; Curtis Publishing Co.* v. *Butts*, 388 U.S. 130 (1967). Where plaintiff is, however, a "private individual," the constitutional inhibitions do not require a showing of actual malice, but leave the states free to establish their own standards of liability, subject only to the requirement that those standards demand actual culpability at a minimum, and that actual damages, as distinguished from purely presumed or punitive damages, be shown. *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 348-50 (1974). "Actual malice" requires a showing that a statement is made either with knowledge that it is false, or with reckless disregard as to whether it is false or not. *New York Times Co., supra* at 279-80. Whatever the prior status of the third situation requiring a showing of actual malice, that of a publication relating to an individual's involvement in a "matter of public interest," it must now be considered that it is the status of the individual, rather than the nature of the matter in which he is involved, that triggers the requirement for showing actual malice. The plurality opinion in *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29 (1971), must now be considered overruled. *Gertz* v. *Robert Welch, Inc., supra* at 346; *Time, Inc.* v. *Firestone*, 424 U.S. 448, 454 (1976). *Michlin* v. *Roberts*, 132 Vt. 154, 318 A.2d 163 (1974), insofar as it adopts the *Rosenbloom* "public interest" position, is likewise overruled.

It therefore becomes pertinent to examine the status of the plaintiff in this action, admittedly a police officer, detective, and active in politics, "with aspirations to the office of Washington County Sheriff." We must apply federal standards in determining whether, as such, he is a "public official." *Rosenblatt* v. *Baer*, 383 U.S. 75, 84 (1966). The term is left undefined by *New York Times*, which did, however, note that

some defamatory statements are unprotected because they do not *relate* to the official conduct of a public official. Anything which touches on an official's fitness for office, however, satisfies the test of relevance. *Garrison* v. *Louisiana*, 379 U.S. 64, 77 (1964). And a charge of criminal conduct, no matter how remote in time or place, can never be considered irrelevant to an official's fitness for purposes of applying the "knowing falsehood or reckless disregard" rule of *New York Times. Monitor Patriot Co.* v. *Roy*, 401 U.S. 265, 277 (1971); *Ocala Star-Banner Co.* v. *Damron*, 401 U.S. 295, 300 (1971). It seems almost beyond dispute that the publications here in issue related to the plaintiff's official conduct, and we so hold.

It also seems equally clear that plaintiff's status is that of a public official within the meaning of the decided cases. Not on all fours, but highly persuasive, are the holdings that plaintiff was a public official in *Henry* v. *Collins*, 380 U.S. 356 (1965), relating to a county attorney and a police chief, in *St. Amant* v. *Thompson*, 390 U.S. 727, 730 (1968), relating to a deputy sheriff, and in *Time, Inc.* v. *Pape*, 401 U.S. 279 (1971), relating to a deputy chief of detectives. All of these were held to meet the test set out in *Rosenblatt* v. *Baer, supra,* at 85, of having, or appearing to the public to have, a substantial responsibility for or control over the conduct of government affairs. We are impressed especially by the rationale of the Illinois court in *Coursey* v. *Greater Niles Township Publishing Corp.*, 40 Ill.2d 257, 264-65, 239 N.E.2d 837, 841 (1968):

> It is our opinion that the plaintiff is within the "public official" classification. Although as a patrolman he is "the lowest in rank of police officials" and would have slight voice in setting departmental policies, his duties are peculiarly "governmental" in character and highly charged with the public interest. It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an "on the street" level than in the qualifications and conduct of other comparably low-ranking governmental employees performing more proprietary functions. The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the

performance of that office cannot constitutionally be inhibited by threat of prosecution under State libel laws.

Accordingly, plaintiff's action is barred under the rule in *New York Times* unless he can satisfy constitutional standards by showing that the defendants' publication was motivated by "actual malice" as defined in that case.

To the same general effect is *Moriarty* v. *Lippe*, 162 Conn. 371, 294 A.2d 326 (1972). We therefore hold that plaintiff here is a "public official" within the meaning of *New York Times*, and that the trial court was correct in holding he must meet the test of "actual malice" laid down in that case.

■ Although the claim was made below that plaintiff is also a "public figure" within the meaning of the actual malice rule, that contention is not briefed on appeal, and we do not consider it. We pass to plaintiff's contention that the evidence, viewed in the light most favorable to him, would have justified the jury in returning a verdict in his favor under the *New York Times* standard, proof of actual malice by convincing clarity. This standard was reaffirmed in *Beckley Newspapers Corp.* v. *Hanks*, 389 U.S. 81, 83 (1967). We do not view the record as meeting that standard. Neither knowledge of falsity nor reckless disregard was shown.

There is no evidence in the record, either direct or circumstantial, to support a finding that the defendants had knowledge of any falsity in the articles in question. Reversal could be based only upon a showing of reckless disregard for truth or falsity. *St. Amant* v. *Thompson, supra* at 731, speaks of this test as involving "serious doubts" as to the statement's truth; *Garrison* v. *Louisiana, supra* at 74, speaks of a *"high degree* of awareness of ... *probable* falsity." (emphasis added.) None of these elements can be supported by the record below. Defendant Bornemeier denied any notice that the statements were false, althouth admitting the thought had entered his mind. He did not interview the actual participants in the affair described, a deviation from normal practice, but instead relied on a fellow reporter's version of what another police officer had told him. He knew this officer was discharged from the department. The Chief of Police furnished no verification of the account, except that one photo had been autographed by the subject. Plaintiff himself told Bornemeier that the first story

was "far-fetched." The Chief of Police, in a press release, termed it "exaggerated and unfounded," a somewhat contradictory choice of adjectives. We do not construe publication of a contradicted story, in itself, to meet the test of "reckless disregard." At most, the showing below would support a finding or error in judgment, and perhaps slipshod investigation. These we do not regard as sufficient to avoid a directed verdict. *St. Amant* v. *Thompson, supra; Time, Inc.* v. *Pape, supra.*

■ The remaining point briefed by the plaintiff relates to the admission of statements by Bornemeier as to what he was told by a fellow reporter. Since their relevancy in the instant case was to show the sources of information used by Bornemeier as the basis for the published stories, as bearing on the issue of "reckless disregard" or "knowledge of falsity," they were not offered for the truth of the matters asserted therein but simply to show their making and Bornemeier's reliance on them. As such, they were not hearsay in any sense. *Norway* v. *Petit,* 112 Vt. 453, 28 A.2d 380 (1942).

*Judgment affirmed.*