**Elizabeth M. HOSELTON; Jay G. Hoselton; Kristine H. Lovely; Mary Katherine H. White; James C. Hoselton, Appellants,**

**v.**

**METZ BAKING COMPANY, An Iowa Corporation; William C. Metz; Henry J. Metz; William H. Metz, Appellees.**

No. 93–3568.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1994.

Decided Feb. 28, 1995.

Rehearing Denied March 29, 1995.

C. Carleton Frederici, Des Moines, IA, argued (Steven L. Nelson, on the brief), for appellant.

Robert Lawrence Lepp, Omaha, NE, argued (Paul R. Elofson, Wiley Mayne, and John D. Mayne, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Elizabeth Metz Hoselton and her children (collectively, the Hoseltons) brought a diversity action under 28 U.S.C. § 1332 (1988) against William C. Metz, Henry J. Metz, and William H. Metz (the Metzes), and the Metz Baking Company (Metz Baking) in the District Court.[1] Their complaint alleges that the individual defendants breached fiduciary duties owed to the Hoseltons and that Metz Baking breached a stock redemption contract with the Hoseltons.[2] The District Court entered judgment for the Metzes and Metz Baking after a jury returned verdicts in their favor. The Hoseltons timely appeal, and we affirm.

I.

The late Henry Metz Jr. established Metz Baking in 1922, and he originally owned all of the shares in the company. Through a combination of gifts, gifts in trust, and devises, by the early 1980s Henry's two children, Elizabeth Metz Hoselton (Betty) and William C. Metz (Bill), and their families owned all of the shares.[3] The Hoseltons controlled forty-seven percent of the shares while the Metzes controlled fifty-three percent of the shares and managed the company. In 1983, after the two families encountered difficulties reaching a consensus as to how Metz Baking should be managed, Betty and Bill started discussing the sale of Betty's family's shares in Metz Baking.

After initial negotiations broke down, a new round began in 1984. Betty's accountant, Robert V. Williams, attended the meetings and advised Betty regarding the agreement. On August 7, 1984, the Hoseltons and Metz Baking executed a letter of agreement[4] that provided for the redemption of all the Hoseltons' shares in Metz Baking over a five-year period, subject to the company's financial ability to redeem the shares and the approval of the company's creditors. The redemption price was set at $110 per share, resulting in a total purchase price for the Hoseltons' forty-seven percent interest of just over $9,488,000. The agreement also provided as follows:

> If the assets of Metz Baking Company or the majority of the outstanding shares of the company are sold before the redemptions have been completed your unredeemed shares and those of your children and the trusts will participate in the sales at the same prices and terms as affects other stockholders in the selling or liquidating group.

Plaintiffs' Exhibit 16 at 1.

On August 8, 1984, Metz Baking sent Betty an additional letter of agreement giving

---

1. The Honorable Donald E. O'Brien, Senior United States District Judge for the Northern District of Iowa.

2. The complaint also alleged securities laws violations, but the Hoseltons voluntarily dismissed those counts.

3. Henry Metz Jr.'s grandchildren's shares were held in trusts for each grandchild until the grandchild reached age 35. Betty and Bill served as co-trustees of these trusts.

4. Bill Metz signed this agreement in his dual capacity as chief executive officer of Metz Baking and as a co-trustee of the Henry Metz Jr. trusts for the benefit of Betty's children. As noted in footnote 3, the trusts owned shares in Metz Baking.

Metz Baking the right to accelerate the redemption schedule set out in the August 7 letter of agreement. The Hoseltons signed the August 8 letter of agreement. The Hoseltons and Metz Baking executed a third agreement August 15, 1984, transferring the Hoseltons' shares to an escrow account. The August 15 escrow agreement provided in part that "Metz [Baking] has the privilege of accelerating annual redemptions set forth in the schedule." Defendants' Exhibit A–63 at 1.

After the various agreements were executed, Metz Baking redeemed the Hoseltons' shares on an accelerated basis. The final redemption, originally scheduled for October 1, 1989, was accelerated first to October 1, 1988, and then to April 1, 1988. The Hoseltons agreed to each acceleration by signing letters of agreement dated September 3, 1987, and March 2, 1988. The final payment was made and the last of the Hoseltons' shares in Metz Baking were redeemed April 1, 1988.

On May 1, 1988, The Invus Group, Ltd. (Invus), contacted the Metzes and expressed interest in exploring the possibility of acquiring Metz Baking. Invus was in the process of acquiring Heileman Baking Company but had decided that it could not retain Heileman's management because the managers were adverse competitive bidders for Heileman. Having no experience running a baking company, Invus turned to the Metzes and offered them the opportunity to manage a combination of Metz Baking and Heileman Baking, a combination that would be one of the ten largest commercial baking companies in the United States. On May 8, 1988, the Metzes executed a binding letter of intent to sell their 100% stake in Metz Baking to an affiliate of Invus. Pursuant to their agreement with Invus, the Metzes transferred their shares of Metz Baking to Metz Holdings, a new corporation controlled by Invus, in exchange for $50.7 million and a minority interest in Metz Holdings. The Metzes remained in their management positions at Metz Baking, now expanded to include Heileman. The Hoseltons, who no longer owned any Metz Baking shares, did not participate in the transaction. Eventually, in 1993, the Metzes sold their interest in Metz Holdings.

The gravamen of the Hoseltons' complaint is that they were wrongfully excluded from participating in the sale of Metz Baking to Metz Holdings. Under the redemption agreement, they argue, they should have been paid the Metz Holdings purchase price for any of their shares that would not have been redeemed as of May 8, 1988, under the original redemption schedule. The Hoseltons' complaint also alleges that Bill Metz individually, as co-trustee of the Hoselton children's trusts, and the Metzes collectively, as officers of Metz Baking, breached fiduciary duties of disclosure and loyalty owed to the Hoseltons.

The Metzes denied the allegations of the complaint, and the case went to trial by jury. The Hoseltons' claims were thoroughly aired in a trial that consumed fourteen days over a three-week period. The jury found for the defendants. The District Court entered judgment in accordance with the jury verdict, and the Hoseltons appeal, raising evidentiary and instructional issues.

II.

We address the Hoseltons' evidentiary issues first. At trial, the District Court refused to admit certain exhibits relating to the 1988 sale of Metz Baking to Invus as well as any evidence of the 1993 sale of the Metzes' interests in Metz Holdings. The District Court admitted the handwritten notes and deposition testimony of Robert V. Williams, the Hoseltons' accountant when the redemption agreement was negotiated. The Hoseltons challenge each of these rulings, and we consider each in turn.

■ As a preliminary matter, we note that our standard of review is a narrow one. A district court has broad discretion when deciding whether to admit evidence, and we will not disturb an evidentiary ruling "absent a clear and prejudicial abuse of that discretion." *Laubach v. Otis Elevator Co.*, 37 F.3d 427, 428–29 (8th Cir.1994).

## A.

■ The Hoseltons argue that they should have been allowed to introduce Plaintiffs' Exhibits 87 and 89, which relate to the 1988 sale of Metz Baking to Metz Holdings, the Invus affiliate. Exhibit 89 is a disclosure schedule prepared by Metz Baking that lists the 1984 redemption agreement with the Hoseltons as an open contract. Exhibit 87 is a letter agreement executed by the Metzes indemnifying Metz Holdings for any losses incurred as a result of a lawsuit over the 1984 redemption agreement with the Hoseltons. Both of these documents are dated July 29, 1988. Metz Baking had redeemed the last of the Hoseltons' shares on April 1, 1988.

The Hoseltons argue that these exhibits are relevant because they show that the Metzes and Metz Baking, consistent with the position taken by the Hoseltons in this lawsuit, interpreted the redemption agreement as giving the Hoseltons a five-year right to participate in any sale of the company regardless of whether they still owned shares. If the Metzes and Metz Baking did not share that interpretation, they argue, Metz Baking would not have listed the redemption agreement as an open contract. We disagree.

It seems to us, as it did to the District Court, that Exhibits 87 and 89 are not relevant to the interpretation of unambiguous agreements negotiated and signed four years earlier. While the exhibits represent conservative, cautious measures taken by corporate lawyers in the context of a multi-million dollar transaction, they do not make the existence of a fixed five-year right of participation more or less probable. *See* Fed. R.Evid. 401, 402. Indeed, the Hoseltons' arguments for the existence of such a right fly in the face of the plain meaning of the August 8, 1984, acceleration agreement, which unequivocally confers upon Metz Baking the right to speed up the redemption of the Hoseltons' shares.

Even if we were convinced that the exhibits are not totally irrelevant, their probative value is at best slight and is substantially outweighed by considerations of undue delay and waste of time and by the danger that they would cause the jury to confuse the issues. *See* Fed.R.Evid. 403; *see also Coast–to–Coast Stores, Inc. v. Womack–Bowers, Inc.*, 818 F.2d 1398, 1404 (8th Cir.1987) (affirming district court's exclusion under Rule 403 of proffered evidence on collateral matters that would have caused other party to introduce still more collateral evidence in rebuttal). "Federal trial courts possess broad discretion to exclude confusing or misleading evidence," *Stull v. Fuqua Indus., Inc.*, 906 F.2d 1271, 1274 (8th Cir.1990), and we conclude that the District Court did not abuse its broad discretion by excluding Exhibits 87 and 89.

## B.

■ The Hoseltons also argue that the District Court abused its discretion by refusing to permit testimony by Bill Metz, who the Hoseltons called as an adverse witness, regarding the 1993 sale of Metz Holdings. The Hoseltons contend that evidence of the 1993 sale of the Metzes' interests in Metz Holdings would show that the Metzes intended to sell Metz Baking outright prior to the accelerated redemption of shares in 1988. We disagree. Because the proffered evidence of the 1993 sale was not relevant to show the Metzes' or Metz Baking's intent in 1988, the District Court did not abuse its discretion when it excluded this evidence. *See* Fed.R.Evid. 402.

## C.

For their final evidentiary argument, the Hoseltons contend that the District Court abused its discretion when it admitted the deposition testimony of their accountant, Robert V. Williams, and his notes regarding the negotiation of the redemption agreement. The District Court held that the notes either were not hearsay or constituted admissible hearsay, and that the statements contained in the notes did not constitute hearsay because they were not offered for the truth of the matter asserted in the statements, *see* Fed.R.Evid. 801(c), 805. The court permitted the reading of Williams's deposition testimony in order to lay a proper foundation for Williams's notes.

■ The Hoseltons objected to all of Williams's notes, but the focus of their argument on appeal is Defendants' Exhibit A–60. *See, e.g.,* Appellants' Brief at 26 (calling Exhibit A–60 "the most prejudicial notes"). Exhibit A–60 is in Williams's handwriting, and Williams wrote "RVW 8/3/94" in the upper-right-hand corner. Immediately below that notation, Williams wrote "Conf. Bill Metz 9:00 AM 8/3/84." In the upper-left-hand corner, Williams wrote and underlined "Betty Hoselton." The body of Exhibit A–60 consists of Williams's notes regarding the terms that were to be included in the redemption agreement, including "unredeemed shs. available at any price above if co. sold," "subject to lenders [sic] approval," and, most alarmingly for the Hoseltons, "option to accelerate the redemption." In the bottom-right-hand corner, Williams wrote "Called Bill Metz 9:45 8/6/94." Exhibit A–60 is representative of the notes admitted by the District Court.[5]

The Hoseltons argue that Williams's notes are not "business records" within the meaning of the business records exception to the general rule that hearsay is not admissible. *See* Fed.R.Evid. 803(6). A business record is admissible under Rule 803(6) if "made at or near the time [of the events] by . . . a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record," unless other circumstances suggest a "lack of trustworthiness." Fed.R.Evid. 803(6). Williams's notes meet all of these requirements.

Williams testified in his deposition, which was read at trial, that the notes in question were prepared by him in the course of his accounting and consulting business, that it was his practice to take notes at meetings, and that he initialed and dated meeting notes in the upper-right-hand corner. Nothing about the notes suggest that they lack trustworthiness. The notes were prepared in Williams's capacity as Betty Hoselton's accountant and consultant in the transaction, and he thus had duties to his client or clients that would motivate him to make accurate notes and file them properly. Williams further testified that the notes were located in the appropriate file in his office, exactly where records of this sort would likely be found.

■ Holding that the notes meet the requirements of Rule 803(6) does not end our inquiry. The Hoseltons argue that the notes are not solely statements made by Williams but also may be his record of statements made by Bill Metz, with whom Williams was negotiating on Betty Hoselton's behalf. As such, the notes may be hearsay statements within hearsay statements or, in other words, double hearsay. The Hoseltons misstate the law, however, when they argue that each level of hearsay must satisfy the requirements of Rule 803(6) for the notes to be admissible. When evidence contains multiple levels of out-of-court statements, courts must examine each level to determine whether the statements are in fact hearsay and, if so, whether each level meets the requirements of some exception to the hearsay rule. Fed. R.Evid. 805. The Federal Rules of Evidence do not require each level of hearsay to meet the requirements of the same exception.

■ The Hoseltons are correct when they argue that the out-of-court statements in Williams's notes by other declarants do not meet the requirements of Rule 803(6). In the case of Exhibit A–60, however, the statements of the other declarant or declarants are not offered to show the truth of the matters asserted in the statements. The exhibit was offered not to prove that the statement was true, i.e., to prove that the parties had agreed to an acceleration clause, but to show that during the August 3 conference the words were spoken. The exhibit tends to prove that Williams, Betty's accountant, was aware prior to the execution of the August 7 agreement that the company wanted an acceleration clause. The statements recorded within Exhibit A–60 are thus not hearsay.[6] *See United States v. Franks,* 939

---

5. In the ruling challenged by the Hoseltons, the District Court described the exhibits it was admitting as any exhibit "that has got R.V.W. in the upper right, [and is dated] eight three, eight four . . . eight one." Trial Transcript at 2642.

6. With respect to the other notes admitted by the District Court, the Hoseltons have not properly

F.2d 600, 601 (8th Cir.1991) (affirming admission of signatures on Federal Express receipts, admissible business records under Rule 803(6), because they were not offered to prove by second-level hearsay that defendant received packages of cocaine, but to show that packages were received at defendant's address by someone who signed her name); Fed.R.Evid. 801(c).

We therefore hold that the District Court did not abuse its discretion when it admitted Williams's notes because they are business records under Rule 803(6) and the third-party statements contained within them are not hearsay under Rule 801(c).[7]

■ In order to lay a foundation for Williams's notes, the District Court allowed Williams's entire deposition to be read into the record. The Hoseltons now complain about this. At trial, however, the Hoseltons did not object to the reading of Williams's deposition testimony; their only objections went to the admissibility of Williams's notes. In fact, once the District Court ruled that the notes were admissible, it was counsel for the Hoseltons who insisted that Williams's deposition be read into the record in its entirety. Thus the error, if any, was invited error, and the Hoseltons may not use it as a basis for obtaining a reversal. Moreover, as the entire deposition was read into evidence without objection, our review, at most, is only for plain error. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 715 (8th Cir.1993).

■ Federal Rule of Evidence 804(b)(1) provides that testimony given at a "deposition taken in compliance with the law in the course of the same ... proceeding" is admissible if the witness becomes unavailable and "the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." The record shows that the requirements of this rule all were met, with the possible exception of the requirement that the witness be unavailable. While the record is not crystal clear on Williams's unavailability, it strongly suggests that Williams's medical condition and advanced age prevented him from testifying at the trial. In these circumstances, we think it unlikely that any error occurred, and we have no difficulty in concluding the District Court's decision to allow Williams's deposition testimony to be read into the record was not plain error.[8]

Having considered all of the Hoseltons' evidentiary issues, we conclude that none of them affords the Hoseltons a basis for the reversal they seek.

### III.

We turn now to the Hoseltons' argument that the District Court improperly refused to give two of their proposed jury instructions. We review a district court's jury instructions under the deferential abuse of discretion standard. *Bursch v. Beardsley & Piper*, 971 F.2d 108, 112 (8th Cir.1992).

Plaintiffs' Proposed Jury Instruction 13 would have charged the jury that a contract should not be interpreted to place one party at the mercy of another's discretion. *See Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991). The Hoseltons argue they were entitled, under Iowa law,[9] to this "mercy instruction" because it was integral to their theory

---

preserved their objections to the second level of hearsay nor have they made any specific arguments on appeal that would help us decide whether the second-level statements in Williams's other notes satisfy an exception to the hearsay rule.

7. Our holding makes it unnecessary to address the Hoseltons' arguments that Williams's notes were not admissions of a party opponent, admissible under Rule 801(d)(2); past recollections recorded, admissible under Rule 803(5); or so trustworthy as to qualify for admission under the catch-all exception to the hearsay rule, Rule 803(24).

8. The Hoseltons' argument that Williams's notes and deposition testimony are irrelevant, raised for the first time on appeal, is not properly before us and is meritless in any event.

9. In diversity cases, federal law governs the decision as to whether the evidence warrants instructing the jury on a particular topic while state law controls the substantive content of the instructions that are given. *Bursch v. Beardsley & Piper*, 971 F.2d 108, 112 (8th Cir.1992). The parties agree that Iowa law is the appropriate state law in this case.

of the case. The Metzes' interpretation of the agreements, according to the Hoseltons, would allow Metz Baking to accelerate redemption immediately prior to a sale of the company to a third party, thus eliminating the Hoseltons' right to participate in the sale and putting them at the mercy of Metz Baking.

■■■ Litigants are entitled to have the jury instructed on their claims and theories if the proposed instructions are correct statements of the law, supported by the evidence, and brought to the district court's attention in a timely manner. *Des Moines Bd. of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983). A district court will be sustained when it declines to give an instruction that is unsupported by the evidence, *see Bursch,* 971 F.2d at 112, and such instructions should be avoided because they are irrelevant to any finding the jury properly could make and they are thus a potential source of needless confusion, *see Sterkel v. Fruehauf Corp.,* 975 F.2d 528, 531 (8th Cir.1992).

■■■ The evidence in this case does not support the Hoseltons' claim that they were placed at the mercy of Metz Baking within the meaning of *Iowa Fuel.* The defendant in *Iowa Fuel* argued that it had a unilateral right to terminate the contract at issue without any further performance if negotiations over price adjustments broke down. *Iowa Fuel,* 471 N.W.2d at 862. The 1984 redemption agreement did not give Metz Baking such unilateral power. If Invus or some other buyer already had been in the picture, Metz Baking could not have avoided the Hoseltons' participation rights by simply accelerating the time of redemption; Metz Baking concedes that had it engineered the acceleration with "a buyer in the wings," then as a matter of Iowa law it would have violated the

agreement. *See Engstrom v. State,* 461 N.W.2d 309, 314 (Iowa 1990) ("A contract imposes upon each party a duty of good faith in its performance and enforcement. Restatement (2d) of Contracts § 205 (1981)."). The record is devoid of any evidence that Invus or any other buyer was "waiting in the wings" at the time Metz Baking exercised its rights under the acceleration agreement. The Hoseltons therefore were never at the mercy of Metz Baking as they now claim, and the District Court did not abuse its discretion when it refused to give the Hoseltons' proposed "mercy instruction" to the jury.

■■■ The Hoseltons also argue that the court abused its discretion when it refused to give Plaintiffs' Proposed Jury Instruction 26 on breach of fiduciary duty. The instruction would have charged the jury that a defendant who has been accused of a breach of fiduciary duty has the burden of proving that "he properly discharged his obligations and that any transactions with a beneficiary were fair and reasonable." Plaintiffs' Proposed Jury Instruction 26.[10] The cases cited by the Hoseltons in support of their proposed instruction demonstrate that the instruction is not a correct statement of the law regarding the burden of proof, and the court's refusal to give such an instruction was not an abuse of discretion.

The Hoseltons rely on two cases in their brief: *Cookies Food Products, Inc. v. Lakes Warehouse,* 430 N.W.2d 447 (Iowa 1988), and *Rowen v. Le Mars Mut. Ins. Co.,* 282 N.W.2d 639 (Iowa 1979). In *Rowen* the court shifted the burden of proof to the fiduciary only after " 'finding that the defendants actively concealed important characteristics of the transaction from the parties in interest.' " *Id.* at 647. In *Cookies* the court shifted the burden after the plaintiffs demonstrated self-dealing on the part of a director of the corporation. 430 N.W.2d at 453. The mere

---

10. Rather than giving proposed Instruction 26 with respect to the burden of proof in a case involving an alleged breach of fiduciary duty, the District Court charged the jury as follows:

* * * To recover on this claim, referred to as a breach of a fiduciary duty, the Plaintiffs must prove all of the following propositions:

1. A fiduciary duty existed between the Plaintiffs and at least one of the Defendants;

2. One or more of the Defendants breached the fiduciary duty;

3. The breach of the fiduciary duty was a proximate cause of damage to the Plaintiffs;

4. The amount of damages.

If the Plaintiffs have failed to prove any of these propositions, the Plaintiffs cannot recover damages. If the Plaintiffs have proven all of these propositions, the Plaintiffs are entitled to recover damages in some amount.

Instruction No. 19.

allegation of a breach of fiduciary duty does not shift the burden of proof to the alleged fiduciary as the proposed instruction in this case would have done. *See Irons v. Community State Bank,* 461 N.W.2d 849, 853 (Iowa App.1990) (reversing trial court because plaintiff did not offer substantial evidence of breach of fiduciary duty).

Pursuant to Federal Rule of Appellate Procedure 28(j), the Hoseltons have brought to our attention a third decision, *Schettler v. Iowa Dist. Court,* 509 N.W.2d 459 (Iowa 1993). *Schettler* involved a shareholder fraud action brought by an ex-wife against her ex-husband in connection with his purchase of the ex-wife's shares of stock (in a corporation of which he was a managing officer) pursuant to the property settlement in their dissolution of marriage decree. Noting the existence of a fiduciary relationship, the Iowa Supreme Court held that the burden to prove that a contract was fairly procured for value shifts to the corporate officer in cases where a "contract between such an officer and a shareholder ... allows the officer to profit from the sale of the stockholder's shares to the stockholder's detriment...." *Id.* at 466. *Schettler* is inapposite here because the agreements the Hoseltons signed were between them and Metz Baking, not Bill Metz or any other officer of the corporation. In addition, without regard to the burden of proof, there is no evidence in this case from which a jury properly could find that the contract between the Hoseltons and Metz Baking was not fairly procured for value.

The Hoseltons have not adduced any evidence that, under Iowa law, would relieve them of the burden of proof on their breach-of-fiduciary-duty claim, and in any event their proposed Instruction 26 is not a correct statement of the applicable law. Thus the District Court did not abuse its discretion by refusing to give the proposed instruction to the jury.

## IV.

For the reasons stated above, the judgment of the District Court is affirmed.