Filed 10/30/24

VERMONT SUPERIOR COURT
Addison Unit
7 Mahady Court
Middlebury VT 05753
802-388-7741
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-02212

---

**Crystal Sears, et al v. VFW Addison Post #7823, Inc., et al**

---

## ENTRY REGARDING MOTION

Title:        Motion for Summary Judgment (Motion: 3)
Filer:        Susan J. Flynn
Filed Date:   August 07, 2024

## DECISION ON MOTION FOR SUMMARY JUDGMENT

### Factual and Procedural Background

This is a defamation case alleging accusations of embezzlement against volunteers with a local veterans' assistance organization. Defendants, the Veterans of Foreign Wars ("VFW") and two officers of the Middlebury VFW post, Kenley Hallock and Edgar Crosby, move for summary judgment based on plaintiffs' lack of admissible evidence to support their allegations.

The plaintiffs, Crystal Sears and James Russo, are domestic partners and members of the "Veterans of Foreign Wars auxiliary" ("VFW auxiliary"), a part of the larger VFW organization open to the children and grandchildren of eligible veterans. Both Ms. Sears and Mr. Russo volunteered at the Middlebury VFW post (#7823) for several years, including helping with weekly bingo events from 2019 to December 2022. Kenley Hallock is the Commander of the Middlebury VFW post; Edgar "Bub" Crosby and Roxanne "Rocky" McGuire are the post's quartermaster and steward, respectively. Ms. Sears and Mr. Russo are also members of the Middlebury post of the American Legion, where they regularly volunteer. Joe DeGray is the Legion post's Chaplain, Theresa Hinman is a current Legion employee, and David Gipson is the current Commander of the Legion post.

The following facts are undisputed except where noted.

In May 2023, Ms. Sears and Mr. Russo filed a complaint against the VFW, Mr. Hallock, and Mr. Crosby, accusing them of defamation. The complaint arose out of events that occurred on December 12, 2022, and resulted in Ms. Sears and Mr. Russo being "suspended for life" from the VFW post.

On the day in question, the parties agree there was a meeting at the Middlebury VFW among Ms. Sears, Mr. Russo, Mr. Crosby, and Ms. McGuire. At this meeting, Ms. McGuire informed Ms. Sears that the VFW's new insurance provider had asked for financial documentation of bingo games that had previously not been required. This request was retroactive to some extent.

Here, the accounts of the meeting diverge. The parties disagree about Ms. Sears and Mr. Russo's reactions to the request for additional information.

Shortly after the December 12, 2022 meeting, Ms. Sears and Mr. Russo spoke with Theresa Hinman, a bartender at the American Legion. The plaintiffs maintain that, at that time, Ms. Hinman told them about a phone call that she had had with Joe DeGray, the Legion chaplain, describing a conversation between Mr. DeGray and Mr. Crosby in which Mr. Crosby stated that plaintiffs had embezzled VFW funds.[1]

Ms. Hinman, Mr. DeGray and Mr. Crosby dispute Ms. Sears and Mr. Russo's account of the conversation. All deny that embezzlement was ever mentioned in the conversation between Mr. DeGray and Mr. Crosby. Ms. Hinman denies saying it to plaintiffs.

Mr. Russo later confronted Mr. DeGray about the conversation between Mr. DeGray and Mr. Crosby. The parties disagree about what was said during this confrontation. Mr. DeGray denies that he ever stated that Mr. Crosby had accused plaintiffs of embezzlement.

Plaintiffs do not assert that either Mr. Crosby or Mr. Hallock made any other defamatory statement.

Plaintiffs do not assert that Mr. Crosby made a defamatory statement to anyone other than Mr. DeGray.

Ms. Sears and Mr. Russo received their lifetime suspensions in letters from the VFW in February 2023, which stated they could attend no post events apart from their monthly VFW auxiliary meetings. They sought clarification of the reason or reasons for the suspension from Commander Hallock, but the parties dispute the ensuing conversation that took place. Ms. Sears and Mr. Russo then filed the instant complaint.

The VFW maintains that Ms. Sears and Mr. Russo were suspended due to their "disruptive actions, behavior, and foul language to other volunteers . . . in view of the general customers and membership" of VFW post 7823 resulting from the December 12 meeting. Letter to Crystal Sears from Edgar Crosby, filed 5/23/23. The organization and its employees assert that during the meeting, when Ms. Sears was asked about accounting for bingo money, "she just exploded, and four-letter words, and just all in action…it went and carried on into the Bingo parlor in front of the public, a screaming fit". Deposition of Edgar Crosby at 4. Ms. Sears denies any use of profanity, or that she screamed at Ms. McGuire as alleged.[2] Deposition of Crystal Sears at 53, 57.

The disputed conversation with Ms. Hinman occurred on December 14, 2022. Sears Deposition 63. Ms. Sears testified during a deposition that after she mentioned that she and Mr. Russo had been suspended from the VFW, Ms. Hinman responded, "I know, Bub called Joe DeGray and told Joe DeGray that you had embezzled from the VFW". Sears Deposition 64. Mr. Russo testified during his deposition that he overheard this conversation. Deposition of James Russo at 26. Mr. DeGray acknowledges that a phone call with Mr. Crosby occurred, and Ms. Hinman acknowledges that she had a conversation with Ms. Sears, but they each provide different accounts of what was said. Both Ms. Sears and Mr. Russo admitted in their Statement of Disputed Material Facts and Supplemental Statement of Material Facts that

---

[1] Plaintiffs asserted in their Complaint that "The Legion's Chaplain, Joe DeGray, informed them that Defendant Crosby had called, and that Mr. Crosby told him that Mr. DeGray should "watch out" for the Plaintiffs as they had been embezzling from the VFW." Complaint, ¶ 13. This was the single statement identified by plaintiffs as defamatory.

[2] Both parties spend a great deal of time attempting to establish the linguistic habits of Ms. Sears and Mr. Russo to substantiate their account of this meeting, but these facts are not relevant to the sole defamation claim at issue.

they had never personally heard any of the defendants accuse them of embezzlement. Def.'s Stmt. of Undisputed Material Facts, ¶2; Plntff.'s Stmt. of Disputed Material Facts and Supp. Stmt. of Material Facts, ¶2.

When he was deposed, Mr. DeGray denied ever having heard or reported that either Ms. Sears or Mr. Russo had ever been accused of embezzlement and signed a letter prepared by the Middlebury VFW to that effect. Mr. DeGray said Mr. Crosby only alluded to a "problem" with Ms. Sears and Mr. Russo in his phone call and warned him to "watch out" for the plaintiffs. Deposition of Joe DeGray at 7. Despite a somewhat hazy recollection of the letter, Mr. DeGray corroborated this denial in later deposition testimony. Mr. Crosby denied ever making any statement regarding either Ms. Sears' or Mr. Russo's embezzling. Crosby Deposition 6.

Ms. Hinman's position remains less clear. She did not directly deny Ms. Sears' account, but when asked if she had ever heard negative things about Ms. Sears or Mr. Russo, she responded: "I don't hear much about Jim. I hear a lot about Crystal and her getting hyper when she doesn't need to. That's about it." David Gipson, current Commander of the Middlebury American Legion post, testified that he "learned from Joe DeGray that he had received a call from Edgar Crosby" telling Mr. DeGray to "be careful" of Ms. Sears and Mr. Russo. Affidavit of David Gipson at 2.

Plaintiffs testified that hearing accounts of the call between Mr. Crosby and Mr. DeGray from others sparked fears that Mr. Crosby had told other members of the community they were embezzling from the Middlebury VFW. Russo Deposition 26, Sears Deposition 67. Mr. Russo testified that when he confronted Mr. DeGray about his phone call with Mr. Crosby, he asked Mr. DeGray if he "[believed] Bub (Crosby) when he told you that we embezzled," whereas Mr. DeGray testified that Mr. Russo only asked if Mr. DeGray trusted him. Russo Deposition 27, DeGray Deposition 14.

Seeking further clarification, the couple met with Commander Hallock to discuss their suspension. Ms. Sears testified that when asked about the reason behind the ban, Mr. Hallock's only response was "rumors." Sears Deposition 61. By contrast, in Mr. Hallock's account of the conversation, he testified that he cited their "loud and boisterous" behavior at the December meeting but also pointed to "Word [that had come] back to [him] on counting of their monies." Deposition of Kenley Hallock, at 14, 17.

## Summary Judgment Standards

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). A fact is material "'if it might affect the outcome.'" *In re Estate of Fitzsimmons*, 2013 VT 95, ¶ 13, 195 Vt. 94 (quoting *N. Sec. Ins. Co. v. Rossitto,* 171 Vt. 580, 581, 762 A.2d 861, 863 (2000) (mem.)). Allegations made in opposition to the motion, if supported by admissible evidence, are regarded as true when determining if a genuine issue of material fact exists. *Morisseau v. Hannaford Bros.,* 2016 VT 17, ¶ 12, 201 Vt. 313. The benefit of reasonable doubts and inferences goes to the nonmoving party. *Id.* "'Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. . . . The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact.'" *Boulton v. CLD Consulting Eng'rs*, 175 Vt. 413, 417 (2003) (quoting *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 18 (1995)). "'The nonmoving party may survive the motion if it responds with specific facts raising a triable issue, and it is able to demonstrate sufficient evidence to support a prima facie case.'" *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 324 (1986)). "If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at

trial, the moving party is entitled to summary judgment as a matter of law." *Washington v. Pierce*, 2005 VT 125, ¶ 17, 179 Vt. 318 (quoting *G.S. Blodgett,* 163 Vt. at 180).

Legal Analysis

An action for defamation in Vermont has six elements: (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages. *Lent v. Huntoon*, 143 Vt. 539, 546-47 (1983); see also *Crump v. P & C Food Markets, Inc*., 154 Vt. 284, 291 (1990); *Stone v. Town of Irasburg,* 2014 VT 43, ¶ 61, 196 Vt. 356 (citing *Lent v. Huntoon*, 143 Vt. 539, 546-47).

Plaintiffs name three defendants in their Complaint—Mr. Crosby, Mr. Hallock, and the VFW in its organizational capacity. However, they fail to provide evidence that Mr. Hallock ever made any statement that could qualify as defamatory publication, nor do they attribute any defamation to the VFW or assert Mr. Crosby was acting in his official capacity. Thus, the court dismisses Mr. Hallock and the VFW as defendants, and will analyze Plaintiffs' remaining claim against Mr. Crosby below.

Defendants argue that Plaintiffs have failed to support their defamation claim with any admissible evidence or prove a defamatory statement was published to a third party, and thus the court has no option but to grant them summary judgment. Defendants assert that the statement Plaintiffs use as evidence of defamation (the contested accusation of embezzlement during the call from Mr. Crosby to Mr. DeGray) cannot be admitted because it is hearsay. Motion at 3-4. Defendants argue that the call between Mr. Crosby and Mr. DeGray is hearsay because Plaintiffs have no personal knowledge of an accusation of embezzlement and Ms. Hinman's conversation about the phone call with Plaintiffs at the American Legion is "third-hand." *Id*. at 4. Additionally, they argue that the subsequent conversation between Mr. Russo and Mr. DeGray is either irrelevant because Mr. Russo did not explicitly ask what Mr. Crosby said, or inadmissible as hearsay. *Id*.

Plaintiffs respond that the call between Mr. Crosby and Mr. DeGray is not hearsay, and that conflicting accounts of what was said during the call create a genuine dispute of material fact precluding summary judgment. They argue that the purported statement by Mr. Crosby as recounted by Ms. Hinman cannot be hearsay because it is not a statement offered to prove the truth of the matter asserted, but "to show that defamatory publication occurred." Opposition at 6. Since these statements are not asserted for their truth, Plaintiffs assert that the statements are admissible. They contend that the discrepancy between Ms. Hinman's and Mr. DeGray's deposition testimony and Plaintiffs' deposition testimony about what was said represents a genuine dispute of material fact.[3] *Id*. at 7.

The lone statement relied upon by Plaintiffs to prove defamatory publication comes from their disputed account of the conversation with Ms. Hinman.[4] Sears Deposition 66. The alleged statement from Mr. Crosby to Mr. DeGray, viewed in isolation, is not hearsay because it is not offered for the "truth of

[3] In the alternative, Plaintiffs argue that even if Mr. Crosby only told Mr. DeGray to "watch out" for Ms. Sears and Mr. Russo, this would still constitute defamation by implication. Defamation by implication occurs where "circumstances surrounding a statement are such that they would 'reasonably cause the statement to convey a defamatory meaning to its recipients.'" *Quill Ink Books, Ltd. v. Soto*, No. 1:19-CV-476, 2019 WL 5580222, at *3 (E.D. Va. Oct. 29, 2019) (quoting *Pendleton v. Newsome*, 772 S.E.2d 759, 763 (Va. 2015)).

[4] "Q. That's the only source, is this Theresa Hinman telling you . . . something that Joe said? A. Correct." Sears Deposition 66 (errors in transcription omitted).

the matter asserted." *See* V.R.E. 801(c). Statements not offered for their truth, but to prove publication in a defamation action, are not hearsay.[5] *Columbo v. Times-Argus*, 135 Vt. 454, 458 (1977); *see also Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1061 (8th Cir. 1995); Reporter's Notes, V.R.E. 801; 2 McCormick on Evidence §249, (8th ed. 2022). However, this is not the statement at issue here. Importantly, the statement on which Plaintiffs rely is Ms. Hinman's alleged statement in conversation that "Bub called Joe DeGray and told Joe DeGray that you had embezzled from the VFW." Sears Deposition 64.

Hearsay is defined as an out-of-court statement offered in evidence to prove the truth of the matter asserted. V.R.E. 801(c). Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements satisfies an exception to the hearsay rule. V.R.E. 805; *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1243 n.1 (2d Cir. 1995); *Hoselton*, 48 F.3d at 1061. Inadmissible evidence, such as hearsay, cannot be used to defeat summary judgment. *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 22-23 (1995); Reporter's Notes, V.R.C.P. 56.

Plaintiffs rely on *Columbo v. Times-Argus*, 135 Vt. 454 (1977), and *Walker v. Wanner Engineering, Inc.*, 867 F. Supp. 2d 1050 (D. Minn. 2012), for the proposition that statements not offered for their truth, but to prove something like defamatory publication, are not hearsay. While this proposition is true in isolation, to end the inquiry here would obscure important details of this case and result in improper application of Vermont's evidentiary standards. Because the allegedly defamatory statement from Mr. Crosby to Mr. DeGray was communicated to Plaintiffs through a third-party intermediary (Ms. Hinman), this case can clearly be distinguished from the cases they offer to argue the statement is admissible.

In *Columbo*, a police officer told a reporter information about another police officer's alleged misconduct; that reporter shared the information with a colleague, who was later accused of defamation for publishing the information about the police officer in question. *Columbo*, 135 Vt. at 457-58. Although multiple layers of hearsay also existed in that case, neither layer was offered for the truth of the matter asserted, but "to show [that the statements were made] and [the reporter's] reliance on them." *Id.* at 458. The first potential layer of hearsay identified by the court—the statements from the police officer to the first reporter—were offered to show that defamatory publication occurred (it would occur again when the accused reporter published the story in a newspaper). The second potential layer—the statement from the first reporter to his accused colleague—was offered to show the "basis for the published stories," not to establish that they were true. *Id.* This distinguishes *Columbo* from this case, where one layer of the relevant hearsay statement—the communication between Mr. DeGray and Ms. Hinman—is offered for its truth.

Similarly, *Wanner Engineering Inc.* can be distinguished from this case because of particular circumstances surrounding the making of statements objected to as hearsay. In that case, the plaintiff "[stated] that . . . another Wanner employee told him that [defendant's agent] informed the employees [plaintiff] had been terminated because he had been stealing from Wanner for years." *Wanner Eng'g, Inc.*, 867 F. Supp. 2d at 1057. This statement occurred "at a general assembly of Wanner employees." *Id.* at 1053. The employee who communicated the statement to the plaintiff heard the statement directly, providing the employee with firsthand knowledge and creating only one layer of hearsay. That single layer of hearsay fell under the exception for showing defamatory publication, and, thus, the statement was admissible. *Id.* at 1057. This differs from the situation here. In this case, the statement at issue was heard

---

[5] "Statements that are offered for proof of some other fact are not hearsay. Thus, testimony that words were spoken will be admitted to prove 'verbal acts,' such as the terms of a contract or publication in a defamation action, and to prove circumstantially the state of mind of the speaker or hearer." Reporter's Notes, V.R.E. 801 (citations omitted).

over the phone and then communicated to another, who then relayed that information to Plaintiffs. This establishes multiple layers of hearsay that did not exist in *Wanner Engineering*.

The 7th and 2nd circuits confronted similar situations to this case in *Jordan v. Binns* and *United States v. Cummings*. *Jordan v. Binns*, 712 F.3d 1123 (7th Cir. 2013); see also *United States v. Cummings*, 858 F.3d 763 (2d Cir. 2017). *Jordan v. Binns* involved statements communicated through multiple persons regarding culpability for an accident between a motorcycle and a tractor trailer. After the collision, the tractor-trailer driver asserted that the plaintiff-motorcyclist had told him the accident was the motorcyclist's fault, which the driver repeated to the plaintiff's husband. The plaintiff's husband repeated what the driver said his wife (plaintiff-motorcyclist) had said in conversations with a police officer and an insurance adjuster following the accident. Both the plaintiff-motorcyclist and her husband later denied making these statements. In court, the tractor-trailer driver wished to admit the husband's statements about what his wife had said into evidence. This determination turned on the question of whether the plaintiff's husband (who was also a party) had met the threshold for making his own "statements" by repeating her admissions, such that they could be admitted under the party-opponent hearsay exception, or whether he was simply echoing his wife's statements, which would be hearsay if offered for their truth. *Binns*, 712 F.3d at 1128-29. The court found the husband's statements to be sufficiently distinct from his wife's to admit them into evidence as statements of a party-opponent. In the court's analysis, the two statements contained fundamentally different substantive content: "the truth of the matter asserted by Betty is that the accident was her fault, but the truth of the matter asserted by Ted is that Betty said the accident was her fault." *Id*. at 1129. This distinction between a statement directly overheard by an individual and a statement overheard by an individual and later described to another person has important implications for this case.

Like the statements of the motorcyclist's husband in *Binns*, a distinction between Mr. DeGray's alleged statement to Ms. Hinman and Ms. Hinman's alleged statement to Plaintiffs bears directly on the admissibility of that evidence. Plaintiffs are offering Mr. DeGray's alleged statement that Mr. Crosby told him Plaintiffs had embezzled from the VFW to show a defamatory statement was made. Because this statement is not being offered to show that Mr. Crosby's statement was true, it would be admissible by itself. V.R.E. 801. However, Plaintiffs are relying on a statement from Ms. Hinman that Mr. DeGray *told her* that Mr. Crosby told him plaintiffs had embezzled from the VFW, which is not the same. This adds additional layers of hearsay that must fit into an exception to be admissible. Sears Deposition 64.

The additional layer of transmission changes the question necessary to determine if a statement qualifies as hearsay. Instead of asking whether Mr. Crosby made the statement attributed to him, the question becomes whether Mr. DeGray told Ms. Hinman that Mr. Crosby made the statement. As such, Plaintiffs cannot avoid offering Ms. Hinman's statement for the truth of the facts asserted in that statement. For the statement to be relevant, Plaintiffs must be offering it to show that it was true that Mr. DeGray told Ms. Hinman what Mr. Crosby had said to him. Thus, it is an out-of-court statement offered for the truth of the matter asserted that does not fall under any hearsay exception and must be excluded.[6]

The situation here also resembles the 2nd Circuit's ruling in *United States v. Cummings*, 858 F.3d 763 (2d Cir. 2017). In that case, part of the defendant's appeal of his conviction on counts relating to drug and firearm possession and murder was that the lower court made a reversible error by allowing hearsay evidence into his trial. The 2nd Circuit agreed, vacated his convictions, and remanded the case for a new trial. *Cummings*, 858 F.3d at 766. The hearsay evidence in question was an alleged death threat made by the defendant to a government witness while they were confined in the same prison. *Id*. at 769-770.

---

[6] Plaintiffs' defamation by implication argument is also unavailing here. They have presented no evidence to show any implied defamatory statements were made directly in the presence of Plaintiffs or anyone else who relayed those statements to Plaintiffs; thus, they would face the same problems of admissibility.

Importantly, the court concluded from the record that the government witness could not have heard the threat directly, but must have heard about it from a third party. *Id*. at 773. This created two layers of hearsay, the threat itself and the third-party's recounting of the threat. Although the threat was admissible because it was asserted to prove consciousness of guilt and not whether the defendant actually intended to kill the witness, the third-party statement was "only probative if admitted for the truth of the matter asserted, i.e., that the third-party declarant *actually heard* Cummings make this threat." *Cummings* at 774. Thus, the court found the third-party statement to be hearsay, and that the lower court erred in admitting it as evidence. *Id*.

Ms. Sears and Mr. Russo have failed to present sufficient admissible evidence to support a prima facie case for defamation. Plaintiffs offer as evidence an allegedly defamatory statement that contains multiple layers of hearsay—the statement from Mr. Crosby to Mr. DeGray, and the statement from Mr. DeGray to Ms. Hinman. As noted above, each part of a statement containing multiple levels of hearsay must qualify for an exception to be admissible. V.R.E. 805; *Cook*, 69 F.3d at 1243 n.1; *Hoselton*, 48 F.3d at 1061. However, only one of the statements at issue falls into an exception. Although an out-of-court statement offered to prove something besides the truth of the statement, such as defamatory publication, is not hearsay, that exception does not apply in this situation. Plaintiffs were not direct recipients of the allegedly defamatory statement but claim to have heard about its publication through a third party, Ms. Hinman. Offering a statement as evidence that has been transmitted through a third-party intermediary changes the "truth of the matter" analysis in this situation to whether the third-party said the statement in the first place (or at all), not whether a defendant published a defamatory statement to another. Because Ms. Hinman's statement must be offered for its truth in order to be probative, the statement is hearsay and fails Vermont's test for admissible multiple hearsay. Since this excludes Plaintiffs' only evidence on which they rest their defamation claim, defendants are entitled to summary judgment.

<u>Conclusion</u>

The court grants VFW's motion for summary judgment.

The motion is GRANTED.

**Signed Electronically on October 30, 2024 pursuant to V.R.E.F. 9(d).**

_____
**David Barra**
**Superior Court Judge**