## CENTRAL TRUST CO. OF NEW YORK v. SHEFFIELD & BIRMINGHAM COAL, IRON & RY. CO.

## ALABAMA IRON & RY. CO. et al. v. ANNISTON LOAN & TRUST CO. et al.

(Circuit Court, N. D. Alabama, N. D.    February 21, 1894.)

1. COURTS—TERM TIME AND VACATION—SALES—CONFIRMATION.
   Equity Rule No. 1, U. S. Cir. Ct., provides that "the circuit courts, as courts of equity, shall be deemed always open for the purpose of * * * issuing and returning mesne and final process," etc. *Held*, that the question of the confirmation of a sale made under a decree in chancery is one as to the exercise and sufficiency of final process, and may be determined in vacation, especially when each of the parties has brought the other before the chancellor on the subject by a rule nisi,—the one to show cause why the sale should not be confirmed; the other, why it should not be set aside.

2. JUDICIAL SALES—TERMS AND ADVERTISEMENT—PROSPECTIVE ACT.
   Act Cong. March 3, 1893, regulating the manner in which property shall be sold under orders and decrees of any United States courts, is prospective, only, in its operation, and does not apply to cases where decrees have been rendered prior to that act, specifically providing for the place of sale, and the time and place for advertisement.

3. SAME—CONFIRMATION—MANNER OF SALE—PRICE.
   An objection that property was sold at judicial sale as a whole, and not in the parcels in which it actually existed, and that either of such parcels was of sufficient value to discharge the lien for which the whole was sold, is not available against confirmation of the sale, where neither party objected to the decree which directed its sale as a whole, and where there is no offer to pay higher price in case the bidding shall be reopened.

In Equity. On rule to show cause against confirmation of sale. The original proceeding was a bill filed by the Central Trust Company of New York against the Sheffield & Birmingham Coal, Iron & Railway Company. The Anniston Loan & Trust Company filed an intervening petition in this suit, and had a decree therein. The Alabama Iron & Railway Company and others thereupon filed a supplemental and dependent bill of complaint against the trust company and others. Rule absolute.

Henry B. Tompkins, for complainants.
Knox & Bowie, for defendants.

Before PARDEE and McCORMICK, Circuit Judges.

PARDEE, Circuit Judge. In the case of The Central Trust Company v. The Sheffield & Birmingham Coal, Iron & Railway Company,

the Anniston Loan & Trust Company, intervener, holder of certain receiver's certificates issued in the main case, obtained a decree November 22, 1892, condemning Napoleon Hill, trustee, or his assignee, the Alabama Iron & Railway Company, and James C. Neely, trustee, or his assignee, the Townley Coal & Coke Company, to pay or cause to be paid to the intervener, the Anniston Loan & Trust Company, a corporation created under the laws of the state of Alabama, or to Knox & Bowie, its solicitors of record, or to Milton Humes, special master, the sum of $29,675, and all the costs of the case, within 20 days from the signing of the decree, and otherwise that the said Milton Humes, special master, shall forthwith proceed to sell at public outcry, for cash, to the highest bidder, all of the property described in the certain two mortgages, and purchased by Napoleon Hill and J. C. Neely, trustees, under a decree of foreclosure in above-entitled suit of Central Trust Co. v. Sheffield & Birmingham Coal, Iron & Ry. Co., of date December 3, 1889, in the city of Huntsville, Madison county, Ala., in front of the United States government building in the said city, giving 30 days' notice in some newspaper published in said county of the time, terms, and place of sale, and that the said special master shall execute proper deeds of conveyance to the purchaser upon receipt of the purchase money, and place him in possession of the property purchased. The said decree also specifically described the property thus ordered to be sold, and the decree further provides that the special master, Milton Humes, shall make report of his action in the premises to the court. This decree, on appeal to the circuit court of appeals for the fifth circuit, was affirmed. 6 C. C. A. 242, 57 Fed. 25. Thereafter, and after the expiration of 20 days, the special master advertised the said property, as required in said decree, by publication of the time and place of sale for 30 days in the Huntsville Daily & Weekly Argus, a newspaper published in the city of Huntsville, Ala., to be sold on Monday, the 22d day of January, 1894. Pending that advertisement, the Alabama Iron & Railway Company, a corporation created by and existing under the laws of the state of Alabama, the Townley Coal & Coke Company, a corporation created by and existing under the laws of the state of Alabama, Napoleon Hill, trustee, and J. C. Neely, trustee, brought their supplemental and dependent bill of complaint against the Anniston Loan & Trust Company, and therein recited the litigation in this court previously had in relation to the decree and order of sale obtained by the Anniston Loan & Trust Company, as hereinbefore recited. The complainants averred that the special master had caused to be advertised the property for sale under the said decree, and assigned the following objections and complaints against the same: (1) That no advertisement had been made in any other paper or in any other place, except Huntsville, Ala., although the property advertised to be sold was none of it situated in Madison county, Ala., in which county Huntsville is situated, but is situated in the counties of Colbert, Franklin, Marion, Winston, Walker, and Fayette, although said advertisement recites that the said property is situated only in the counties of Colbert, Walker, and Fayette. (2)

That the said advertisement is illegal, in that it undertakes to sell property lying in six different counties, in each of which counties there is a newspaper published, without having said property advertised in either of said counties wherein it lies, and that the said advertisement is illegal and void because the sale is not advertised to be made upon the premises, nor in a county where any portion of said real estate is situated, as provided by the act of congress approved March 3, 1893, entitled, "An act to regulate the manner in which property shall be sold under orders and decrees of any United States courts." (3) That said advertisement, so made, contains a description of what was formerly the Sheffield & Birmingham Railroad, now known as the Birmingham & Tennessee River Railroad, which property at one time was a part of the Sheffield & Birmingham Coal, Iron & Railway Company's property, but upon which it is averred that the claim of the said Anniston Loan & Trust Company never bore any lien. (4) That the levy upon and advertisement of a large quantity of property situated in so many different counties is unnecessary and onerous, and can result in no possible good to any one connected with the litigation; that the three furnaces situated in the six acres of ground in Sheffield, Colbert county, are worth several hundred thousand dollars, and could easily be made to yield at forced sale a sum of money largely in excess of the claim of the Anniston Loan & Trust Company; further, that other properties levied upon were of sufficient value to pay the claim of the Anniston Loan & Trust Company. The prayer of the bill was for an injunction restraining the sale of properties of the complainant, or any part of them, from being made by the special master, as set forth in his advertisement, on the 22d day of January, 1894, and for general relief.

Upon this bill, on a rule nisi, the injunction on the hearing was denied. Thereafter, on the 22d day of January, 1894, the special master proceeded to make the sale of all the property described in the decree and mentioned in his advertisement, except that of the said line of railroad formerly known as the Sheffield & Birmingham Railroad, and at said sale said property was bid for and purchased by John H. Noble, trustee, he being the best and last bidder therefor, for the sum of $35,000. The said purchaser complied with the terms of sale, and thereupon the special master put the said purchaser in possession of the property sold. On the 1st day of February, 1894, the Alabama Iron & Railway Company filed an amended and supplemental bill to the bill of complaint filed in the cause on the 13th of January, 1894, therein reciting that the special master, Milton Humes, in accordance with his advertisement referred to in the original bill, exposed for sale, and sold, all of the property described in the decree, except the property of the Sheffield & Birmingham Railroad Company, now known as the Birmingham & Tennessee River Railroad Company; that, at said sale, John B. Knox, Esq., counsel for the Anniston Loan & Trust Company, bid in the whole of said property, which was sold in lump, and not in parcels,—including the property belonging to the

Alabama Iron & Railway Company, and also the property belonging to the Townley Coal & Coke Company,—for the sum of $35,000, and had the same knocked down to J. H. Noble, trustee for the Anniston Loan & Trust Company; that immediately after the sale, and without any report being filed by said special master, said special master executed and delivered to said Noble, as trustee, a deed for the whole of said property, and thereupon a writ of assistance was obtained, without any order of court therefor, and the marshal for the northern district of Alabama thereunder placed the said Noble, his attorneys or agents, in possession of a part, if not the whole, of said property of the Alabama Iron & Railway Company, and in possession of a part, if not the whole, of the property of the Townley Coal & Coke Company. The complainants aver that said sale was illegal and void because of the facts set forth and shown in the original bill; that the deed given by said special master is illegal and void because no report of said sale was made by him to the court, and no confirmation thereof had and obtained, and that the action of the purchaser in procuring the writ of assistance was also illegal and void. Complainants further aver that the properties belonging to the Alabama Iron & Railway Company cost, in cash, about $1,100,000, or more; that the properties belonging to the Townley Coal & Coke Company cost, in cash, $200,000, or more. The prayer of this amended and supplemental bill was for a decree declaring the sale illegal and void, declaring the deed of the special master to the purchaser invalid and of no effect, and that the properties so sold should be delivered up to the complainants, to be held and possessed by them until there shall be a legal sale of the same, and a legal deed by the special master, and legal possession obtained by whomsoever shall be the legal purchaser. They further pray for writ of injunction against John H. Noble, trustee, his agents, attorneys, and abettors, restraining and enjoining them from retaining possession, custody, or control of said properties, or any part of them, or in any wise selling or disposing of said property so illegally purchased by them, and from using, operating, or in any manner interfering with or incumbering, the same, until the final decree of the court. Upon this bill the complainants obtained a rule nisi directing John H. Noble, trustee, and the Anniston Loan & Trust Company, to show cause on the 12th day of February, 1894, before Don A. Pardee, circuit judge, at his chambers in New Orleans, why the injunction prayed for should not issue pendente lite, and further obtained a restraining order, as follows:

"United States Circuit Court for the Northern District of Alabama, Northern Division.

"In Equity.

"Alabama Iron and Railway Company et al. v. Anniston Loan and Trust Company et al.

"Upon reading and considering the foregoing bill, being an amended and supplemental bill to the bill of complaint filed in this cause on the 13th of January, 1894, it is ordered that the same be filed, and that the defendants, the Anniston Loan & Trust Company and J. H. Noble, trustee, do show cause before me, at my chambers, in New Orleans, La., on Mon-

day, the 12th day of February, 1894, or as soon thereafter as counsel can be heard, why the injunction and relief prayed for in said cause should not be granted.

"It is further ordered that in the meantime, and until the hearing above provided for, the said Anniston Loan & Trust Company and John H. Noble, trustee, their attorneys, agents, and abettors, be temporarily restrained and enjoined from making any sale, transfer, or disposition of any part of the property of the Alabama Iron & Railway Company or of the Townley Coal & Coke Company, as the same were set forth and described in an advertisement lately appearing in the newspaper called the Argus, published at Huntsville, Ala., in a notice wherein Milton Humes, Esq., as special master, advertised said property to be sold at Huntsville on the 22d day of January, 1894.

"It is also ordered that until further orders of the court the defendants, the Anniston Loan & Trust Company and J. H. Noble, trustee, their attorneys, agents, employes, and abettors, and all parties claiming under or through them, or either of them, are also restrained and enjoined from possessing, controlling, or exercising any rights of ownership, possession, or dominion over, the aforesaid properties, or any part thereof, as against the said Alabama Iron & Railway Company, the Townley Coal & Coke Company, or their attorneys, officers, or agents.

"It is further ordered that this order be served by having certified copies of the same served upon the Anniston Loan & Trust Company and J. H. Noble, trustee, by the marshal, or his authorized deputy, for the northern district of Alabama. This order not to be construed as preventing a report of the sale and proceedings to confirm the same regularly and according to equity practice."

On February 6th, John H. Noble, trustee, filed his petition in court, showing that he was the purchaser of the property sold by the special master under the decree rendered in the case called The Central Trust Company of New York v. The Sheffield and Birmingham Coal, Iron & Railway Company, in favor of the Anniston Loan & Trust Company; that he has in all respects complied with the terms of his purchase, by paying the purchase money, and had received a deed of conveyance to said property, as directed by the decree of the court, and, exhibiting a copy of the special master's report, prayed for a rule nisi to issue to respondents, the Sheffield & Birmingham Coal, Iron & Railway Company, the Alabama Iron & Railway Company, the Townley Coal & Coke Company, Napoleon Hill, trustee, James C. Neely, trustee, and Jacob G. Chamberlain, receiver, to show cause why the said sale should not be confirmed. Said rule nisi was granted, returnable on the 12th day of February, 1894, before Don A. Pardee, circuit judge, at his chambers, in New Orleans. On the 6th day of February, 1894, the Alabama Iron & Railway Company, the Townley Coal & Coke Company, Napoleon Hill, trustee, and James C. Neely, trustee, filed their second amended and supplemental bill of complaint, wherein the history of the sale is again recited, and the same alleged to be illegal for the following reasons, to wit: (a) Because the advertisement under which said special master made said sale was illegal, null, and void. (b) Because said sale was of the whole of said properties in a lump, without putting them up in separate lots or parcels. (c) Because the price of $35,000 is so small and inadequate that no court can legally confirm said sale. (d) Because said special master, as orators are informed and believe, had not filed any report of said

sale at the time of executing the deed. (e) Because the report filed by said special master on the 24th day of January, 1894, has never been ratified, adopted, or confirmed by this honorable court, and cannot be except in term time, after due opportunity has been given orators to file exceptions, if they see proper, to said report of said sale. (f) Because said deed, being made before confirmation of said sale, conveyed no title or claim, or right whatever, to said John H. Noble, as trustee, or otherwise. The prayer of this amended bill was for a decree declaring the said deed so executed by the special master to John H. Noble, trustee, illegal and void, and that the same be canceled and set aside as a cloud upon the title of orators, (complainants,) and reiterating the prayer for an injunction.

On the 12th day of February, both the two rules nisi heretofore mentioned came on for hearing, all parties being represented by counsel. Thereupon, the Anniston Loan & Trust Company and John H. Noble, trustee, filed demurrers to the second amended and supplemental bill, and also an answer to the second amended and supplemental bill. The grounds of these demurrers and answers need not be recited. The Alabama Iron & Railway Company, the Townley Coal & Coke Company, Napoleon Hill, trustee, and James C. Neely, trustee, filed grounds of exception to the report of the special master, in which the objections, uncertainties, and illegalities, as set forth in the several amended and supplemental bills filed by the Alabama Iron & Railway Company et al. are reiterated, although more fully detailed and specified, and, further reciting the issues presented by the said amended and supplemental bills, contended that the confirmation of the sale and the disposition of the exceptions to the report of the special master should not be disposed of prior to a hearing and decree under said amended and supplemental bills, and further setting out that the property sold is subject to a lien equal, if not superior, in rank, to the lien of the Anniston Loan & Trust Company, amounting to $125,000 and interest, which lien and the holders thereof should be represented; and exceptors further objected to the hearing of the rule nisi for the confirmation of the sale made by the special master in vacation, and not in and at the regular term of the circuit court for the northern division and northern district of Alabama.

The vital question presented for consideration is whether the sale made by the special master under the decree of court of November 22, 1892, should be confirmed. If so, the proper disposition of all other questions presented is easily determined.

A preliminary question is whether we have, sitting in chambers, and not at a stated term of the circuit court for the northern division of the northern district of Alabama, jurisdiction to pass upon the question of confirmation. The first equity rule is as follows:

"Court, When Open. The circuit courts, as courts of equity, shall be deemed always open for the purpose of filing bills, answers, and other pleadings, for issuing and returning mesne and final process and commissions, and for making and directing all interlocutory motions, orders, rules, and other proceedings, preparatory to the hearing of all causes upon their merits."

It is to be noticed that the question of confirmation of a sale made under a decree of a court of chancery vel non is one as to the execution and sufficiency of final process; and, in this particular case, it is to be further noticed that all the questions presented are questions of law arising upon the face of the record, there being no facts in contestation which require the taking of evidence.

In the case of Mining Co. v. Mason, 145 U. S. 349–364, 12 Sup. Ct. 887, it is held that equity rule 83, which provides for exceptions to masters' reports, hearing the same, etc., has no reference to a report by a master of a mere ministerial matter like a sale, but only to his report upon matters heard and determined by him; and in the same case (page 364, 145 U. S., and page 891, 12 Sup. Ct.) the rule as stated in 8 Am. & Eng. Enc. Law, p. 254, to wit:

"The master or commissioner making the sale should report his action to the court, to the end that the sale may be confirmed, and motion to confirm the sale, with notice to the parties adversely interested to the confirmation, should be made. Confirmation nisi will be ordered to become absolute within a designated time, unless cause is shown against it. If cause is not shown, it stands confirmed,"

—is approved as the correct rule of practice.

In Camden v. Mayhew, 129 U. S. 73, 9 Sup. Ct. 246, where the question was whether a confirmation of a sale under a decree in chancery is necessary in order to compel the purchaser to comply with his bid, it is said:

"It is undoubtedly true that Camden's bid of $173,050 was, in legal effect, only an offer to take the property at that price, and that the acceptance or rejection of that offer was within the sound equitable discretion of the court, to be exercised with due regard to the special circumstances of the case, and to the stability of judicial sales."

Section 574, Rev. St., provides—

"That district courts, as courts of admiralty and as courts of equity so far as equity jurisdiction has been conferred upon them, shall be deemed always open for the purpose of filing any pleading, or issuing or returning mesne and final process and of making and directing all interlocutory motions, orders, rules and other proceedings, preparatory to the hearing upon their merits of all causes pending therein,"

—which is substantially the same as is provided for the circuit courts under the first equity rule.

In Gould & Tucker's Notes of the Revised Statutes, commenting on this statute, it is said:

"With respect to that provision, it is to be observed that while common-law judges properly exercise their authority only when holding a court, and have no power to sit in vacation, yet courts of equity are always open; the chancellor's authority being personal, as representing the crown or supreme head of the state, and capable of exercise equally in term time and in vacation;" citing Langd. Eq. Pl. § 38; Crowley's Case, 2 Swanst. 1; Brown v. Lull, 2 Sumn. 443, Fed. Cas. No. 2,018.

As a matter of practice, within this circuit,—and in the other circuits, so far as we are advised,—it has been universal to treat all questions of confirmation of sale as relating to final process, and under the head of "Motions and Orders not Grantable of Course," and as within the jurisdiction of the chancellor to determine at

any time, irrespective of whether a stated term of the circuit court be in session; and this under and in accord with the sixth equity rule, which is as follows:

"Motions and Orders not Grantable of Course. All motions for rules or orders and other proceedings, which are not grantable of course, or without notice, shall, unless a different time be assigned by a judge of the court, be made on a rule-day, and entered in the order-book, and shall be heard at the rule-day next after that on which the motion is made. And if the adverse party, or his solicitor, shall not then appear, or shall not show good cause against the same, the motion may be heard by any judge of the court ex parte, and granted, as if not objected to, or refused, in his discretion."

The objection to considering and determining the matter of confirmation at this time, particularly when each side has brought the other before the chancellor on the subject on a rule nisi, must be disregarded. The report of the master shows that, in advertising and selling the property, he has strictly followed and complied with the terms of the decree under which he derived his authority, and his report thereof, and the sale made by him thereunder, should be confirmed, unless the exceptions filed thereto are well taken.

The first exception is that the special master had no right to make the sale, because he had not made any legal or proper advertisement of said properties, as provided by the act of congress of March, 1893, in respect of legal sales made under any process in the circuit courts of the United States, and presents the only serious question in relation to the matter of confirmation. The act of congress, having been passed after the decree in question was rendered, must be given a retroactive or retrospective application, if it applies in this case. The act not only contains no expression of an intention that it shall be retrospective, but, on the contrary, seems to show on its face that it was expected to operate only prospectively. In each section of the act the expression occurs, in regard to details of either the sale or advertisement, "as the court rendering said order or decree of sale may direct." It is a general rule that statutes are not given a retroactive effect unless the contrary intention is clearly expressed. Murray v. Gibson, 15 How. 421; U. S. v. Heth, 3 Cranch, 399; McEwen v. Bulkley, 24 How. 242; Twenty Per Cent. Cases, 20 Wall. 179; Auffm'ordt v. Rasin, 102 U. S. 620; Chew Heong v. U. S., 112 U. S. 536, 5 Sup. Ct. 255. In U. S. v. Heth, supra, the court said:

"Words in the statute ought not to have a retrospective action unless they are so clear, strong, and imperative that no other meaning can be annexed to them,—unless the intention of the legislature cannot otherwise be satisfied,—and such is the settled doctrine of this court."

If the statute in question is given a retrospective effect, it would impose a necessity of again applying to the court in the case of every unexecuted decree rendered prior to the passage of the act, a mischief which we do not think was intended. The authorities cited by the contestants bear upon the question of vested rights and remedial statutes, but, in the view we take of the statute, such authorities need not be considered. We construe the statute as

clearly intended for application prospectively, and as not intended to apply to cases in which decrees had been rendered prior to the act specifically providing for the place of sale, and the time and place for advertisement.

It is further objected to the confirmation that the sale was made of all the property subject to intervener's lien as an entirety and not in parcels, in relation to which it is averred that either parcel was of sufficient value to pay intervener's lien. The answer to this objection is twofold: First, the decree so directed, and neither party complained until afterwards; second, there is no offer now by any one to pay a higher price for any parcel, or for the whole, than the sale realized, in case the bidding shall be reopened. It is true there are averments as to the cost of parcels and of the whole, which tend to show that the property realized an inferior price, compared with its cost, but these averments fall short of showing that on another sale a better price would be realized. The present hard times, and the depreciation attending all property of the kind in question, may possibly account for the situation; and the case seems to be somewhat like Mining Co. v. Mason, supra. The decree is a sufficient answer, however, to the objection that the sale was not made in parcels. Hammock v. Trust Co., 105 U. S. 77–86; Central Trust Co. v. Wabash, etc., Ry. Co., 30 Fed. 332.

Another objection to the confirmation is that other liens bear upon the same property, of equal rank, and that the property ought to be resold, and for the benefit of all lienholders. The record of the cases discloses that there are other and large liens on the property, of equal and perhaps prior rank to the intervener's lien. This in part accounts for the price brought at the sale, as the purchaser as well as other bidders knew that the property offered was incumbered. But such fact is no reason why the sale, as made, should not be confirmed; the other lienholders not complaining, and otherwise being able to take care of themselves.

On the whole, we see no reason why the sale should not be confirmed, and an order to that effect will be entered. As the sale should be confirmed, the complainants in the dependent and supplemental bill and in amended supplemental bill ought not to have the injunction pendente asked for.

McCORMICK, Circuit Judge, concurs.